UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA

RECEIVED
2012 NOV 29  P 4: 16

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | |
|---|---|
| **COURTNEY MCBRIDE** )<br>)<br>Plaintiff, )<br>) cv 2:12-CV-1047-MHT-TFM<br>v. )<br>) JURY TRIAL DEMANDED<br>HOUSTON COUNTY HEALTRH CARE )<br>AUTHORITY d/b/a SOUTHEAST )<br>ALABAMA MEDICAL CENTER; )<br>DR. DINISH KARUMANCHI, )<br>an individual; CITY OF DOTHAN, a )<br>municipality organized and existing under )<br>the laws of the state of Alabama, GREG )<br>BENTON, in his individual and official )<br>capacity as the Chief of Police; BOARD )<br>OF COMMISIONERS OF THE CITY )<br>OF DOTHAN, a governmental entity )<br>organized and existing under the laws of )<br>the State of Alabama )<br>)<br>Defendants. ) | |

## COMPLAINT

### THE PARTIES

1.  Plaintiff Courtney McBride is over the age of majority and is a resident of Florida.

2.  Defendant Houston County Health Care Authority (hereafter "HCHCA") is a non-profit corporation organized and existing under the laws of Alabama, with its principal place of business in Dothan, Houston County, Alabama. At all times relevant to this complaint, defendant HCHCA owned, operated and was doing business as Southeast Alabama Medical Center (hereafter "SAMC"), an acute care general hospital in Dothan, Houston County, Alabama.

3. Defendant Dr. Dinish Karumanchi is over the age of majority and upon information and belief is a resident of Houston County, Alabama.

4. Defendant Greg Benton is over the age of majority and upon information and belief is a resident of Houston County, Alabama. He serves as the Chief of Police of the City of Dothan and in his supervisory position is responsible for the development and implementation of policies and procedures at the City of Dothan Jail and the training and retention of jailers and officers under his command.

5. Defendant City of Dothan is a municipality organized and existing under the laws of the State of Alabama.

6. Defendant Board of Commissioners of the City of Dothan is a governmental entity organized and existing under the laws of the State of Alabama.

## JURISDICTION AND VENUE

7. This Court has jurisdiction of this action pursuant to 28 U.S.C.§ 1332 because the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states. Jurisdiction is also invoked pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)(4) to obtain redress of rights guaranteed by the Fourteenth Amendment to The Constitution of the United States pursuant to 42 U.S.C. § 1983.

Venue is proper in the United District Court for the Middle District of Alabama under 28 U.S.C. § 1391 because the events giving rise to the claim occurred in this District and the defendants are subject to personal jurisdiction in this District.

## STATEMENT OF FACTS

8. On June 21, 2012 Courtney McBride was referred to SAMC by the court for psychiatric evaluation.

9. Courtney McBride was admitted through the emergency room to SAMC on June 21, 2012. While in the emergency room on June 21, 2012, Ms. McBride was seen by Dr. Hugh Davis and numerous nurses including Jay Hutto and Hilliary Lott.

10. While a patient at SAMC Ms. McBride was under the care of Dr. Dinish Karumanchi. While under the care of Dr. Karumanchi, she was treated for a major depressive disorder, psychotic disorder and Bipolar Disorder. She remained a patient at SAMC until July 4, 2012, when she was discharged to the Dothan City Jail.

11. During her hospitalization, Ms. McBride was prescribed Lamictal by Dr. Dinish Karumanchi on June 25, 2012. Dr. Karumanchi failed to warn Ms. McBride that one of the possible complications of Lamictal use was Stevens-Johnson Syndrome (SJS).

12. One of the possible side effects from the use of Lamictal (a seizure medication) which the doctor did disclose was seizures should the medication not be properly administered. Based on this warning, Ms. McBride and her mother pleaded with Dr. Karumanchi not to discharge her to the City of Dothan Jail while taking the medication. The doctor however, assured Ms. McBride and her mother that the Dothan Jail had properly trained medical staff to monitor Ms. McBride and to properly administer her medications.

13. Dr. Karumanchi discharged Ms. McBride to the care of the City of Dothan Jail on July 4, 2012, with instructions to continue the following medications: Buspar, Flagyl, Therapeutic Multivitamin, Seroquel, Zoloft and Lamictal. The doctor instructed the officer, who was an employee of the City of Dothan, that Mrs. McBride should be brought to emergency room

should her condition worsen. This information was relayed by the officer to all jailers at the Dothan City Jail and Greg Benton.

14. Ms. McBride was transported by an officer to the City of Dothan Jail as a pre-trial detainee. Almost immediately her condition worsened. She began to complain to jailers of a sore throat, difficulty swallowing and fever. Her face was swollen. She repeatedly requested medical attention. These requests were made to numerous jailers including shifts supervisors and others in supervisory capacities. Her requests were made known to Greg Benton. Her requests for medical attention were ignored.

15. Over the next several days, Ms. McBride's condition continued to decline. During this time jailers failed and refused to provide Ms. McBride with her medications at the proper times and on several occasions failed to provide the medications altogether.

16. Ms. McBride and other detainees who observed her steadily declining condition pleaded with jailers to obtain immediate medical attention for Ms. McBride. The jailers with deliberate indifference to Ms. McBride's condition failed and refused to obtain medical treatment for her for several days.

17. Finally, on July 10, 2012, Ms. McBride was transported to SAMC Emergency Room. At that time she complained of sore throat, difficulty swallowing, trouble eating, earache, congestion, swollen face, fever and chills. She was dehydrated. She was in a weakened, confused and disoriented state. She was in extreme pain, rating her pain as a nine out of ten. She was diagnosed with Pharyngitis-Tonsillitis, Canker Sore and Rash. Ms. McBride was again discharged to the Dothan City Jail. During this visit Ms. McBride received treatment from Dr. Kim Hanson and nurses Jay Hutto and Hilliary Lott.

18.     When Ms. McBride returned to jail she was released. She again returned to the SAMC Emergency Room on July 11, 2012 seeking help. She continued to voice similar complaints from the prior day. Despite exhibiting classic symptoms of Stevens-Johnson Syndrome, questions to Ms. McBride centered on whether she had engaged in rough sex. She was diagnosed with Fever Blisters and Candidiasis and again discharged. During this visit she received treatment from Dr. Rita Fairclough and nurses Jay Hutto and Hunter Clark.

19.     On July 12, 2012, Ms. McBride again returned to the SAMC Emergency Room for the fourth time in less than a month. At this time she had a rash over 99% percent of her body. Her skin was literally falling off her body. She was in extreme and excruciating pain. It is at this time she is first properly diagnosed with SJS secondary to Lamictal use and the Lamictal was discontinued. She was transferred to ICU and thereafter to the UAB Burn Unit.

20.     As a result of the actions and inactions of Defendants, including the delay in obtaining medical treatment for Ms. McBride, she now has scarring over the majority of her body. She endures extreme pain over her entire body. She has lost all of her hair. Her nails grow abnormally. Her vision has been compromised. She is not menstruating. She has numerous other medical conditions relating directly to this debilitating and preventable incident. She has significant medical bills as a result of these injuries and is expected to have significant future medical expense.

## COUNT I

## ALABAMA MEDICAL LIABILITY ACT

### (Houston County Health Care Authority and Dr. Dinish Karumanchi)

21. The Plaintiff adopts and incorporates by reference all of the allegations of preceding paragraphs of this Complaint as if the same were set out fully herein.

22. Defendants Houston County Health Care Authority and Dr. Dinish Karumanchi are both "health care providers" within the meaning of the Alabama Medical Liability Act of 1987, § 6-5-542 et seq. of the Code of Alabama (1975).

23. In treating Plaintiff Courtney McBride, the Defendants, including any individuals who were acting as employees or agents of any of the Defendants at relevant times, had a duty to exercise such reasonable care, skill, and diligence as other similarly situated health care providers in the same general line of practice ordinarily have and exercise under similar circumstances.

24. Defendants Houston County Health Care Authority and Dr. Dinish Karumanchi and their employees, agents and/or servants Dr. Rita Fairclough, Dr. Kim Hanson, Nicole Fennell, Jay Hutto, Hunter Clark, Hilliary Lott and any other individuals who were acting as employees agents and/or servants of these Defendants at relevant times, negligently and/or wantonly breached the standard of care owed to Courtney McBride by failing to comply with the applicable standard of care, including specifically as follows:

   a. Failed to warn Plaintiff of the numerous and life-threatening risks associated with Lamictal;
   b. Failed to obtain an accurate and complete history of Plaintiffs' prior medical treatment and medications;
   c. Failed to timely and accurately document in Plaintiff's chart medications which she had been administered and prescribed;
   d. Failed to monitor for signs and symptoms Stevens-Johnson Syndrome;

  e. Failed to monitor for signs and symptoms of complications from Lamictal use;
  f. Failed to diagnose and treat Stevens-Johnson Syndrome in the early stages even though Plaintiff exhibited classic symptoms of same;
  g. Discharged Plaintiff to the care of the Dothan City Jail even though it was known to them that the jail was inadequately staffed and trained to care for Plaintiff;
  h. Failed to give proper instructions for Plaintiff's care upon each discharge;
  i. Failed to properly prescribe, fill, administer and monitor medications;
  j. Failed to seek consults; and
  k. Failed to properly hire, train, supervise, monitor and retain staff.

25. The Defendants' breaches of the standard of care as described above each proximately caused physical and psychological injury to Plaintiff along with causing her excruciating pain and suffering, mental anguish, permanent injury, loss of enjoyment of life, and consequential and incidental damages. These damages are expected to continue in the future.

**WHEREFORE, PREMISES CONSIDERED**, the Plaintiff respectfully demands a judgment against these Defendants, jointly and severally, for compensatory and punitive damages in the amount to be assessed by a jury together with interest, cost, and such other or further relief to which the Plaintiff may be entitled.

### COUNT II

### (42 U.S.C. § 1983, *et seq.*)

### (Greg Benton)

26. The Plaintiff adopts and incorporates by reference all of the allegations of preceding paragraphs of this Complaint as if the same were set out fully herein.

27. Plaintiff brings this count pursuant to 42 U.S.C. § 1983, *et seq.* for violations of her constitutional rights given by the Fourteenth Amendment of the United States Constitution.

28.     Greg Benton acting under the color of state law, within the meaning prescribed by 42 U.S.C. § 1983, was deliberately indifferent to Plaintiff's serious medical needs in that he had knowledge of a urgent medical condition that would be exacerbated by delay yet unreasonably, unjustifiably and with deliberate indifference delayed obtaining the medical treatment which Plaintiff desperately needed.

29.     Greg Benton acting under the color of state law, within the meaning prescribed by 42 U.S.C. § 1983, was deliberately indifferent to Plaintiff's serious medical needs in that he had knowledge of a serious medical condition but failed and refused to obtain medical treatment for Plaintiff and failed to provide necessary medication.

30.     It is well established that a jail official violates a pre-trail detainee's Fourteenth Amendment right to due process if he or she acts with deliberate indifference to the serious and/ or urgent medical needs of a detainee. Lancaster v. Monroe, 116 F.3d 1419 (11th Cir. 1997). An abundance of prior case law made it clear that an official acts with deliberate indifference when he or she knows that a detainee is in serious need of medical care, but fails and refuses to obtain medical treatment for the detainee. Id. The case law also had clearly established before this case arose that an official acts with deliberate indifference when he or she intentionally delays providing an inmate with access to medical treatment, knowing that the inmate has a life-threatening condition or an urgent medical condition that would be exacerbated by delay. Id.

31.     As a direct and proximate result of the Defendants' actions, Plaintiff has suffered physical and psychological injury along with excruciating pain and suffering, mental anguish, permanent injury, loss of enjoyment of life, and consequential and incidental damages. These damages are expected to continue in the future.

**WHEREFORE, PREMISES CONSIDERED**, the Plaintiff respectfully demands a judgment against these Defendants, jointly and severally, for compensatory and punitive damages in the amount to be assessed by a jury together with attorneys' fees, interest, cost, and such other or further relief to which the Plaintiff may be entitled.

## COUNT III

### (42 U.S.C. § 1983, *et seq.*)

### (City of Dothan, Board of Commissioners of the City of Dothan and Greg Benton)

32. The Plaintiff adopts and incorporates by reference all of the allegations of preceding paragraphs of this Complaint as if the same were set out fully herein.

33. Plaintiff brings this count pursuant to 42 U.S.C. § 1983, *et seq.* for violations of her constitutional rights given by the Fourteenth Amendment of the United States Constitution.

34. Defendants City of Dothan, Board of Commissioners of the City of Dothan and Greg Benton acting under the color of state law, within the meaning prescribed by 42 U.S.C. § 1983, violated Plaintiff's Fourteenth Amendment protected rights by establishing a pattern and practice of denying or delaying treatment for serious medical conditions. These Defendants established a custom or policy regarding the use of outside medical providers so restrictive that detainees were regularly denied prompt medical care for serious medical conditions.

35. Defendants inadequately funded and staffed the jail to provide medical care to detainees and had a policy or custom of doing same. Defendants also inadequately trained jailers to recognize and respond to the medical needs of detainees had had a custom or

policy of doing same. Defendants were aware that jail personnel had limited or no medical training, and that the limited funds appropriated for medical care at the jail did not provide for adequate staffing of jailers and nursing, physician and other medical staff at the jail to attend to the serious medical needs of detainees such as Ms. McBride.

36. Defendants were aware that their failure to fund an on-site nurse and/or physician, or an on-call nurse and/or physician, meant that jail personnel not otherwise qualified or trained to make medical decisions were making such decisions on a regular basis such that detainees were not receiving necessary medical treatment for serious medical needs.

37. Defendants were aware that failure to fund and on-site nurse and/or physician or and on-call nurse and/or physician meant that many medical needs would have to be met by taking inmates to outside facilities. Nevertheless, these Defendants failed to appropriate sufficient funds for reasonably expected emergency medical treatment such that jail personnel were reluctant to take inmates to outside facilities.

38. The refusal of Defendants to adequately fund medical care for detainees, staff the jail and to adequately train jailers was done with deliberate indifference to the medical needs of detainees such as Ms. McBride and proximately caused the denial of appropriate medical treatment for Ms. McBride, or at the least, caused an undue delay in obtaining such treatment.

39. An example of the custom, policy and/or practice of Defendants of refusing and/or delaying necessary medical treatment as described above is reflected in the facts allegations, circumstances and evidence made the basis of the civil action styled <u>Rykard v. City of Dothan</u>, Case No. CV-1:10cv868-MHT, <u>In the United States District Court for the Middle District of Alabama</u>.

40.	As a direct and proximate result of the Defendants' actions, Plaintiff has suffered physical and psychological injury along with excruciating pain and suffering, mental anguish, permanent injury, loss of enjoyment of life, and consequential and incidental damages. These damages are expected to continue in the future.

**WHEREFORE, PREMISES CONSIDERED**, the Plaintiff respectfully demands a judgment against these Defendants, jointly and severally, for compensatory and punitive damages in the amount to be assessed by a jury together with attorneys' fees, interest, cost, and such other or further relief to which the Plaintiff may be entitled.

## COUNT IV

### NEGLIGENCE AND WANTONESS

**(City of Dothan, Board of Commissioners of the City of Dothan and Greg Benton)**

41.	The Plaintiff adopts and incorporates by reference all of the allegations of preceding paragraphs of this Complaint as if the same were set out fully herein.

42.	Defendants City of Dothan, Board of Commissioners of the City of Dothan and Greg Benton had a duty to secure and provide medical treatment for Ms. McBride while under their care, custody and/or control.

43.	Said Defendants breached this duty by negligently and/or wantonly failing and refusing to secure and provide medical treatments for Ms. McBride, and failing to administer medications as directed.

44.	As a direct and proximate result of the Defendants' actions, Plaintiff has suffered physical and psychological injury along with excruciating pain and suffering, mental anguish, permanent injury, loss of enjoyment of life, and consequential and incidental damages. These damages are expected to continue in the future.

**WHEREFORE, PREMISES CONSIDERED**, the Plaintiff respectfully demands a judgment against these Defendants, jointly and severally, for compensatory and punitive damages in the amount to be assessed by a jury together with interest, cost, and such other or further relief to which the Plaintiff may be entitled.

## JURY TRIAL DEMANDED

Respectfully submitted,

**GERALD C. BROOKS**
**(ASB-8266-R76B)**
*Attorney for Plaintiff*

**OF COUNSEL:**
Gerald C. Brooks, Esq.
**BROOKS LAW GROUP, LLC**
P.O. Box 11492
Birmingham, Alabama 35202
Phone: (205) 414-7407 / Fax: (205) 414-7400
geraldbrooks.law@att.net