```
       IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

         MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION


COURTNEY McBRIDE,              )
                               )
     Plaintiff,                )
                               )         CIVIL ACTION NO.
     v.                        )           1:12cv1047-MHT
                               )                (WO)
HOUSTON COUNTY HEALTH CARE     )
AUTHORITY d/b/a Southeast      )
Alabama Medical Center,        )
et al.,                        )
                               )
     Defendants.               )
```

OPINION AND ORDER

Plaintiff Courtney McBride charges that, while she was in pre-trial custody in a city jail, defendants Police Chief Greg Benton and City of Dothan, Alabama were deliberately indifferent to her medical needs, causing her to suffer serious, permanent injuries.  She claims that the defendants' conduct violated the Fourteenth Amendment and state law.  Benton replied by, among other things, asserting the defense of qualified immunity as to McBride's Fourteenth Amendment claim.  The city contested its liability under state law.  Having asserted these

defenses, the defendants then moved to have this court, pending a ruling on the merits of the defenses, stay discovery against them.

The qualified-immunity defense "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  Qualified immunity, which was once called "good-faith immunity," see, e.g., Gomez v. Toledo, 446 U.S. 635, 639-40 (1980) ("[A] public official['s] position might entitle him to immunity if he acted in good faith."); Harlow, 457 U.S. at 807 (referring to "qualified or good-faith immunity"), essentially seeks to protect government officials from monetary liability for unexpected changes in the law.  As such, if Benton is alleged to have violated legal rights that were not "clearly established" in the law at the time of his

challenged conduct, this court will not make him pay for the lack of foresight.

"Qualified immunity is intended not only to protect officials from civil damages, but just as importantly, to protect them from the rigors of litigation itself, including the potential disruptiveness of discovery." Everson v. Leis, 556 F.3d 484, 491 (6th Cir. 2009); see also Ashcroft v. Iqbal, 556 U.S. 662, 685 (2009) ("The basic thrust of the qualified-immunity doctrine is to free officials from the concerns of litigation, including avoidance of disruptive discovery.  If a Government official is to devote time to his or her duties, and to the formulation of sound and responsible policies, it is counterproductive to require the substantial diversion that is attendant to participating in litigation and making informed decisions as to how it should proceed.") (quotation marks and citation omitted).

Consequently, "[u]ntil [the] threshold immunity question is resolved, discovery should not be allowed."

Harlow, 457 U.S. at 818.  In order to "protect[] the substance of the qualified immunity defense," the court "must exercise its discretion so that officials are not subjected to unnecessary and burdensome discovery or trial proceedings" until after the court has determined that the qualified-immunity defense will not stand.  K.M. v. Ala. Dep't. of Youth Serv., 209 F.R.D. 493, 495 (M.D. Ala. 2002) (Thompson, J.) (quoting Crawford-El v. Britton, 523 U.S. 574, 597-98,  (1998)), aff'd, 73 F. App'x 386 (11th Cir. 2003); see also Caraballo-Sandoval v. Honsted, 35 F.3d 521, 524 (11th Cir. 1994) ("[T]he district court properly stayed discovery until it decided the qualified immunity issue.").

To reiterate, the merits of the qualified-immunity inquiry are distinct from the issue of whether the court should stay discovery pending resolution of the defendants' claim to immunity.  Once the qualified-immunity defense is raised and the defendants have moved for a stay of discovery, the first issue before the court

4

is whether to grant the stay, which is an exercise of the court's discretion, and, in general, the "balancing is done with a thumb on the side of the scale weighing against discovery."  K.M., 209 F.R.D. at 495 (quotation marks and citation omitted).  Subsequently and separately, the court must decide whether the immunity defense is meritorious and bars the lawsuit, which turns on whether the defendants' alleged conduct violated a clearly established federal right.

Accordingly, as for the Fourteenth Amendment claim against Benton, this court will stay discovery until after it has decided whether his defense is meritorious. Under the court's earlier scheduling order, the motion to dismiss pursuant to the qualified-immunity doctrine is currently under submission to the court.  See Order (Doc. No. 19).

Although it is clear that discovery should be stayed as to the Fourteenth Amendment claim against Benton, one issue remains.  McBride has named as defendants both

5

Benton and the city, and she has asserted federal and state-law claims against both.  While qualified immunity does not apply to state-law claims, nor does it apply to municipal defendants, Heggs v. Grant, 73 F.3d 317, 319 n.5 (11th Cir. 1996), the court nevertheless thinks an across-the-board stay is warranted in this case.

Here, given the significantly intertwined nature of the claims against Benton and the city, sound judicial administration warrants a brief stay as to all claims against both Benton and the city.  As an initial matter, there is little reason to fear that the court's resolution of the qualified-immunity defense will cause a lengthy delay, as the defendants' relevant motion is already under submission.  McBride has shown no reason a brief stay would prejudice her case.  Given that, bifurcating discovery into two stages makes little sense.  It seems foreseeable that proceeding as such would lead to unnecessary disputes regarding the propriety of discovery requests, which would waste judicial resources.

See K.M., 209 F.R.D. at 495 ("[S]ome sort of stay is required as to even [the] two defendants [who did not move to stay], because the court refuses to order these claims to proceed to trial because of the danger of wasting judicial resources through piecemeal litigation, which far outweighs any advantage for any of the parties.").

Moreover, as the Supreme Court has explained, if discovery is stayed against one defendant but not related co-defendants, the stay is, practically speaking, likely to be illusory for the intended beneficiary. "It is quite likely that, when discovery as to the other parties proceeds, it would prove necessary for [the party against whom discovery has been stayed] and their counsel to participate in the process to ensure the case does not develop in a misleading or slanted way that causes prejudice to their position. Even if [defendants] are not yet themselves subject to discovery orders, then,

7

they would not be free from the burdens of discovery." Iqbal, 556 U.S. at 685-86.

In sum, it is clear that Benton is entitled to a stay of discovery relating to the Fourteenth Amendment claim. In the interest of efficiency, this court will also stay discovery as to the state-law claims against Benton and all claims against the city, even though those claims are not covered by the qualified-immunity doctrine.

\*\*\*

Accordingly, it is ORDERED that:

(1) Defendants City of Dothan and Chief of Police Greg Benton's motions to stay discovery pending this court's ruling on their assertion of the qualified-immunity defense (Doc. Nos. 20 and 36) are granted.

(2) All discovery is stayed pending resolution of the pending motions to dismiss (Doc. Nos. 10, 17, and 26).

DONE, this the 25th day of February, 2013.

　　　　　　　　　　　　　　/s/ Myron H. Thompson
　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE