UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| COURTNEY MCBRIDE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 1:12cv1047-MHT-TFM |
| ) | [wo] |
| HOUSTON COUNTY HEALTH CARE ) | |
| AUTHORITY d/b/a Southeast ) | |
| Alabama Medical Center, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM OPINION AND ORDER**

Now pending before the Court are Plaintiff's *Motion to Quash Subpoenas and Motion for Protective Order* (Doc. 58, filed October 9, 2013), *Motion to Quash Subpoenas and Motion for Protective Order* (Doc. 60, filed October 16, 2013), *Motion to Compel Supplemental Responses* (Doc. 83, filed January 13, 2014), and Defendant Dinesh Karumanchi, M.D.'s ("Dr. Karumanchi") *Motion to Compel* (Doc. 63, filed October 25, 2013). On June 21, 2012, McBride was referred to Southeast Alabama Medical Center by the court for psychiatric evaluation. Doc. 70 at 4. While a patient at the medical center, McBride was under the care of Dr. Karumanchi. *Id.* Dr. Karumanchi treated Courtney McBride ("McBride" or "Plaintiff") for major depressive disorder, psychotic disorder, and bipolar disorder on or around June 21, 2012 through July 4, 2012. *Id.*

On June 25, 2012, Dr. Karumanchi wrote McBride a prescription for Lamictal (25 mg twice per day), as well as Zoloft, Seroquel, Flagyl, and Buspar. *Id.* One of the known

complications that can result from taking Lamictal are severe rashes that present as Stevens Johnson Syndrome ("SJS"), and toxic epidermal necrolysis ("TEN"), among other conditions. *Id.* The manufacturer's recommended initial dose of Lamictal is 25 mg per day; however, Dr. Karumanchi prescribed 25 mg twice per day. *Id.* Additionally, Dr. Karumanchi prescribed Zoloft, which in conjunction with Lamictal, is known to increase the likelihood of having adverse reactions. *See* Doc. 70 at 5. On July 4, 2012, McBride was released from Dr. Karumanchi's care and transported to the City of Dothan Jail, where over the course of several days McBride's condition deteriorated. *See* Doc. 70 at 7-8. On July 10, 2012, McBride was transported to Southeast Alabama Medical Center for emergency care. After multiple days of treatment for a severe rash, immense pain, high temperatures, among others things, McBride was diagnosed with SJS and TEN, secondary to Lamictal use.

McBride alleges that Dr. Karumanchi "negligently and/or wantonly breached the standard of care owed" to her including failure to warn, failure to obtain informed consent, failure to monitor, among others.[1] *See* Doc. 70 at 10-11. Throughout the complaint, McBride asserts that Dr. Karumanchi proximately caused "physical and psychological injury to the Plaintiff along with causing her excruciating pain and suffering, mental anguish, permanent injury, loss of enjoyment of life, and consequential and incidental damages" and post-traumatic stress disorder that are expected to continue in the future. *See* Docs. 1 at 7;

---

[1] McBride asserts several other claims against other individuals and entities; however, the Court will only discuss those asserted against Dr. Karumanchi because he is the only defendant involved in the discovery dispute presently at issue.

70 at 9, 15.

On or about September 10, 2013, Dr. Karumanchi issued subpoenas to Central Alabama VA Healthcare, Jacksonville VA Outpatient Clinic, Gateway Behavioral Unit, and SpectraCare seeking production of McBride's psychiatric treatment records. McBride seeks to quash the subpoenas asserting that her psychiatric treatment records are absolutely privileged under Alabama law. *See* Docs. 58, 60. In opposition to the motion to quash, Dr. Karumanchi argues that McBride waived the privilege under federal law by claiming damages for psychological injuries, mental anguish, and post-traumatic stress disorder.

Additionally, on or about September 20, 2013, McBride served her second set of discovery requests to Dr. Karumanchi including ten Interrogatories, thirteen Requests for Production, and twenty-three Requests for Admissions. *See* Doc. 83 at 1. On October 21, 2013, McBride received Dr. Karumanchi's responses; however, she asserts that Dr. Karumanchi failed and refused to produce any responsive documents and his responses are evasive and non-responsive. *Id.* In opposition to the motion, Dr. Karumanchi argues that he responded as completely and fully as he is able and that most of the requests are asking for information of which he does not have firsthand knowledge. *See* Doc. 95.

Finally, on July 18, 2013, Dr. Karumanchi served McBride with discovery requests seeking information pertaining to McBride's prior medical history. Dr. Karumanchi requests this Court to compel McBride to fully and accurately respond to Interrogatory No. 7, to which McBride's response simply directed him to the medical records from Southeast

Alabama Medical Center. *See* Doc. 63. McBride contends that at this time she is unable to recall any other treating physicians that have treated her and that directing Dr. Karumanchi to the medical records in his possession is proper under FED. R. CIV. P. 33. *See* Doc. 65.

### I. DISCUSSION

**A.   Plaintiff's Motions to Quash**

The first issue before this Court is whether the privileged treatment records of McBride's psychiatric physicians are subject to discovery by Dr. Karumanchi. *See* Docs. 58, 60. Federal common law governs a claim of privilege unless the United States Constitution, federal statute or rules prescribed by the Supreme Court provide otherwise. *See* FED. R. EVID. 501. "But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." *Id*. Because this case raises both federal (42 U.S.C. § 1983) and state law claims (Alabama Medical Liability Act), federal privilege law applies. "[T]he federal law of privilege provides the rule of decision in a civil proceeding where the court's jurisdiction is premised upon a federal question, even if the witness-testimony is relevant to a pendent state law count which may be controlled by a contrary state law of privilege." *Hancock v. Hobbs*, 967 F.2d 462, 467 (11th Cir. 1992) (cited by *Kelly v. Owens*, 2:05-CV-1150MHTTFM, 2007 WL 2580492 (M.D. Ala. Sept. 4, 2007); and *Wilson v. Doss*, 2:09-CV-21-MEF-CSC, 2010 WL 1729111 (M.D. Ala. Apr. 28, 2010)). Thus, as is the case here, where a party files a case premised on both federal question jurisdiction and a state law claim under diversity jurisdiction, federal common law provides the rules of

privilege on all claims; the choice of law is not decided on a claim-by-claim basis.

It is undisputed that under both federal and Alabama law, psychotherapist/patient privilege is absolute.[2]  *See Jaffee v. Redmond*, 518 U.S. 1, 15, 116 S. Ct. 1923, 1931, 135 L. Ed. 2d 337 (1996); and *Ex parte United Serv. Stations, Inc.*, 628 So. 2d 501, 503 (Ala. 1993). It is further undisputed that Dr. Karumanchi's subpoenas seek McBride's confidential psychiatric treatment records.  Thus, the records sought by Dr. Karumanchi are privileged and not subject to disclosure absent a waiver by McBride.  *See Jaffee*, 518 U.S. at 15, 116 S. Ct. at ,1931, n. 14 ("Like other testimonial privileges, the patient may of course waive the protection").  Dr. Karumanchi argues that McBride impliedly waived her privilege by placing her mental health at issue in the case at bar.  *See* Doc. 62.

The Eleventh Circuit has been silent on the issue of implied waiver of psychotherapist/patient privilege; however, this Court as well as other federal courts have held that the privilege is impliedly waived where the plaintiff puts their mental or emotional state at issue.  *See Kelly*, 2:05-CV-1150MHT-TFM, 2007 WL 2580492, *3 (This Court

---

[2] Psychotherapist/patient privilege is absolute in the federal context only in the sense that there is no balancing test to weigh the patient's privacy concerns versus the evidentiary need of the records:

> Making the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure would eviscerate the effectiveness of the privilege. As we explained in *Upjohn,* if the purpose of the privilege is to be served, the participants in the confidential conversation "must be able to predict with some degree of certainty whether particular discussions will be protected. An uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all."

*Jaffee*, 518 U.S. at 17-18, 116 S. Ct. at 1932 (citing *Upjohn Co. v. United States,* 449 U.S. 383, 393, 101 S.Ct. 677, 684, 66 L.Ed.2d 584 (1981)).

found that it could not "fathom a more clear example of voluntary waiver of the psychotherapist-patient privilege" than a plaintiff who claimed to have been diagnosed with bipolar disorder before the alleged incident, and post-traumatic stress disorder after the alleged incident in the jail.); *Wilson*, 2:09-CV-21-MEF-CSC, 2010 WL 1729111, *3 (Finding that the plaintiff affirmatively placed his mental health at issue, and thus the Court concluded "that the privilege which protects disclosure of psychotherapy records has been waived" after the plaintiff asserted claims for intentional and negligent infliction of emotional distress and mental anguish).[3] As noted in *Wilson*, the Eleventh Circuit has long recognized implied waiver in analogous privileges such as the attorney-client privilege. *Wilson*, 2:09-CV-21-MEF-CSC, 2010 WL 1729111, *3 (citing *Cox v. Administrator United States Steel & Carnegie*, 17 F.3d 1386, 1417 (11th Cir. 1994)).[4]

---

[3] *See also Maday v. Pub. Libraries of Saginaw*, 480 F.3d 815, 821 (6th Cir. 2007) (By seeking emotional distress damages, the plaintiff had "put her emotional state at issue in the case" and therefore waived any psychotherapist-patient privilege); *Doe v. Oberweis Dairy*, 456 F.3d 704, 718 (7th Cir. 2006) ("If a plaintiff by seeking damages for emotional distress places his or her psychological state in issue, the defendant is entitled to discover any records of that state."); *Schoffstall v. Henderson*, 223 F.3d 818, 823 (8th Cir. 2000) (The plaintiff "place[d] . . . her medical condition at issue" by seeking emotional distress damages and therefore waived the psychotherapist-patient privilege.); *Fisher v. Southwestern Bell Tel.Co.*, 2010 WL 257305, *3 (10th Cir. 2010) ("Ms. Fisher's request for emotional-distress damages placed her psychological state in issue and entitled [the defendant] to discover her therapy records.").

[4] The attorney-client privilege "belongs solely to the client," and the client may waive it, either expressly or by implication." *In re Von Bulow*, 828 F.2d 94, 100, 101 (2d Cir. 1987). We have observed that the doctrine of waiver by implication reflects the position that the attorney-client provilege "'was intended as a shield, not a sword.'" *GAB Business Services, Inc. v. Syndicate 627*, 809 F.2d 755, 762 (11th Cir. 1987) (applying Florida law) (quoting *Pitney-Bowes, Inc. v. Mestre*, 86 F.R.D. 444, 446 (S.D. Fla. 1980)). In other words, "[a] defendant may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes." *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir.), *cert. denied* 502 U.S. 813, 112 S.Ct. 63, 116 L.Ed.2d 39 (1991); *accord United States v. Jones*, 696 F.2d 10369, 1072 (4th Cir. 1982) ("Selective disclosure for tactical purposes

However, other courts in this Circuit have noted that the majority of district courts have adopted a middle position, holding that a plaintiff does not put his or her mental health at issue by simply alleging mental anguish or "garden variety" emotional distress. *Chase v. Nova Se. Univ., Inc.*, 11-61290-CIV, 2012 WL 1936082, *4 (S.D. Fla. May 29, 2012).[5] The courts have identified five conditions in which a plaintiff's mental health is placed "in controversy":

> (1) stating a tort claim for intentional or negligent infliction of emotional distress;
>
> (2) alleging a specific mental or psychiatric injury or disorder;
>
> (3) alleging unusually severe emotional distress;
>
> (4) intending to offer expert testimony to support a claim for emotional distress damages; and/or
>
> (5) conceding that his or her mental condition is in controversy.

*Id.* However, it is unnecessary for the Court to grapple with whether the above conditions should provide a standard for this Court to follow, because it is clear that McBride has placed her mental health at issue in this case.

Here, even considering the above conditions, McBride has clearly put her mental

---

waives the privilege.")

[5] *See also Ortiz–Carballo v. Ellspermann,* No. 5:08–cv–165–Oc–10GRJ, 2009 WL 961131, at *2 (M.D.Fla. Apr.7, 2009) ("The majority of federal courts that have addressed the issue have held that a party does not place his mental condition in controversy merely by requesting damages for mental anguish or 'garden variety' emotional distress."); *Stevenson v. Stanley Bostitch, Inc.,* 201 F.R.D. 551, 553 (N.D.Ga.2001) ("The majority of courts have held that plaintiffs do not place their mental condition in controversy merely by claiming damages for mental anguish or 'garden variety' emotional distress.")

health in issue by contending that she has suffered psychological injuries, mental anguish, and post-traumatic stress disorder. In stating claims for post-traumatic stress disorder and psychological injuries, McBride is clearly seeking damages for a "specific mental or psychiatric injury or disorder." *Id.* McBride has affirmatively placed her mental health at issue, therefore, the Court concludes that McBride waived the privilege which protects disclosure of her psychiatric treatment records. However, McBride's psychiatric treatment records should receive protection from uses that are outside of the scope of Dr. Karumanchi's defense in this case. Consequently, the parties shall submit a protective order with respect to McBride's mental health treatment records.

**B.     Plaintiff's Motion to Compel Supplemental Responses**

Next, McBride moves this Court to compel production and responses to a series of discovery requests including ten Interrogatories, thirteen Requests for Production, and twenty-three Requests for Admissions. *See* Doc. 83 at 1. The Court has determined that all of the requests cover two main issues with only slight variations: (1) the studies, papers, treatises, text books, articles or other documents that Dr. Karumanchi used to study Lamictal, and (2) to verify the treatment received, diagnoses, treatment records, billing records, and the reasonableness of the billing at three different hospitals. McBride claims that Dr. Karumanchi's responses are insufficient and that he has failed to produce the requested documents.

The first issue requests that Dr. Karumanchi both name and produce copies of all

studies, papers, treatises, text books, articles or other documents that Dr. Karumanchi used to form the basis of his knowledge of Lamictal, and/or those he considers to be written authorities on Lamictal. *See* Doc. 83 at 2-4. During his deposition, Dr. Karumanchi testified that he has read and owns materials that he has used as resources on Lamictal. However, in response to McBride's request that he identify each of them, Dr. Karumanchi objected because McBride "seeks a comprehensive analysis of all medical literature ever reviewed by this defendant regarding Lamictal. At this time, this defendant has not undertaken such analysis for purposes of this litigation." *See* Doc. 95 at 2. Dr. Karumanchi further stated that his care and treatment of McBride "was based upon his training, education, experience, and clinical judgment, which was reasonable, appropriate, and within the standard of care." *Id.* It is common knowledge that a professional will review several resources on subjects applicable to his specialty throughout his or her career.

It is apparent to this Court that it would be difficult for any professional, including doctors and even attorneys, to recall every resource they have used as a basis for their collective knowledge on a particular issue. Dr. Karumanchi said that he is unable to recall each source with particularity, but is certain he has reviewed several sources on Lamictal. This Court is unable to compel information that Dr. Karumanchi simply does not possess.[6] If at any point throughout this case Dr. Karumanchi recalls the title of any publication or medical resource he consulted on Lamitcal in the past, this Court expects him to supplement

---

[6] This is the same problem the Court faces with McBride being unable to recall where she received medical treatment, as further discussed below.

his response as soon as practical.  However, at this time McBride's motion for this Court to compel Dr. Karumanchi to supplement his responses to her Interrogatories and Requests for Production is due to be denied.

The second issue involves Requests for Admissions which request Dr. Karumanchi to concede that her treatment was reasonable and necessary, treatment records and billing records are true and accurate copies, and to admit McBride's diagnoses, and the reasonableness of the billing related to three hospitals; UAB Hospital, Flowers Hospital, and Southeast Alabama Medical Center.  *See* Doc. 83 at 6-11.  McBride alleges that Dr. Karumanchi's responses to her Requests for Admissions are insufficient.  Dr. Karumanchi stated that he answered the requests to the best of his knowledge and ability.

Requests No. 1 and 2 ask Dr. Karumanchi to admit that McBride developed Stevens Johnson Syndrome and Toxic Epidermal Necrolysis in July of 2012.  *See* Doc. 83 at 6.  Dr. Karumanchi admits that medical records subsequent to his treatment of McBride do reflect diagnoses for these syndromes; however, Dr. Karumanchi qualified his response by denying that McBride developed either syndrome under his care and treatment or that either condition resulted from any act or omission of his own.  It is clear that Dr. Karumanchi's response is sufficient.  McBride argues that Dr. Karumanchi fails to outright admit or deny the request; however, a review of Rule 36 of the Federal Rules of Civil Procedure clears up any misconception McBride may have:

> If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial

> must fairly respond to the substance of the matter; and *when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest.*

FED R. CIV. P. 36(a)(4) (emphasis added). Dr. Karumanchi clearly admitted that he has reviewed the subsequent medical records at issue and admits that they do reflect a diagnosis for both syndromes; however, since he treated McBride prior to the symptoms arising and has not treated her since she has developed either syndrome, he does not have firsthand knowledge of McBride's condition. Dr. Karumanchi properly identified the admitted part and provided a qualifying response denying the rest.

Requests 7 through 21 ask the same series of four questions related to UAB Hospital, Flowers Hospital, and Southeast Alabama Medical Center. *See* Doc. 83 at 6-11. McBride requests that Dr. Karumanchi admit that the treatment records are reasonable and necessary, that treatment was related to SJS and TEN, that the documents are true and correct copies of the hospitals' records, that the documents are true and correct copies of medical billing records, and that the charges are reasonable and customary in the specific hospital's county. *Id.* Dr. Karumanchi states that he is unable to admit or deny the request because he did not provide medical care to McBride at any of the three hospitals listed, nor is he the custodian of records at any of them. Rule 36 of the Federal Rules of Civil Procedure also speaks very clearly on this issue:

> The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

FED R. CIV. P. 36(a)(4) (emphasis added).  Dr. Karumanchi does not have firsthand knowledge of any of these requests.  For example, McBride has not provided this Court with a single reason why Dr. Karumanchi, who practices in Dothan (Houston County), Alabama, would have any knowledge of the reasonable and customary medical billing rates in Birmingham (Jefferson County), Alabama.  Nor has McBride given a valid reason why she believes Dr. Karumanchi possesses sufficient knowledge to verify whether medical records he did not create or generate, especially those at hospitals where he has never been employed, are true and correct copies.  Dr. Karumanchi is not the proper source to verify any of the information McBride requests.  Dr. Karumanchi properly stated that he has reviewed the records; however, he is without sufficient firsthand knowledge to admit or deny McBride's requests.  Therefore, McBride's motion for this Court to compel Dr. Karumanchi to supplement his responses to her Requests for Admissions is due to be denied.

C.     **Defendant's Motion to Compel**

Finally, Dr. Karumanchi moves this Court to compel McBride to fully and accurately respond to their Interrogatory No. 7 which asks her to list all injuries, illnesses, and disabilities that she has ever suffered from, as well as the names and locations of all healthcare providers, clinics, and hospitals where she received treatment.  *See* Doc. 63 at 2.  Based upon representations made by McBride's counsel, at this time she is unable to recall any of the requested information.  Based upon review of his treating records as well as other doctors' records at Southeast Alabama Medical Center, Dr. Karumanchi was able to

determine that McBride sought treatment at Central Alabama VA Healthcare, Jacksonville VA Outpatient Clinic, Gateway Behavioral Unit, and SpectraCare, which are the subject of the motions to quash discussed above. *See* Docs. 58, 60. It is also apparent from McBride's discovery requests that she received treatment subsequent to Dr. Karumanchi related to the underlying claims of the instant action at UAB Hospital, Flowers Hospital, and Southeast Alabama Medical Center. *See* Doc. 83 at 7-11. However, McBride has not been able to provide any information related to her medical treatment history.

This Court is unable to compel a response to a question where a party is currently unable to recall the requested answer. McBride has been questioned and has been unable to recall the requested information. Since McBride is unable to recall this information, the Court finds it reasonable to allow Dr. Karuanchi to conduct further discovery to those closest to her, such as her immediate family, to determine if they are aware of where McBride may have received treatment and what injuries or illnesses she may have suffered in the past. Accordingly, these discovery requests will not count toward Dr. Karumanchi's discovery limits imposed by the *Report of Parties' Rule 26(f) Planning Meeting*. *See* Doc. 27. If at any point throughout this case McBride recalls any of the requested information on her medical treatment history, this Court expects her to supplement her response as soon as practical.

## II.  CONCLUSION

Accordingly, upon consideration of the motions, for the reasons as stated, and for good cause, it is ORDERED as follows:

(1)  Plaintiff's *Motion to Quash Subpoenas and Motion for Protective Order* (Doc. 58), *Motion to Quash Subpoenas and Motion for Protective Order* (Doc. 60) be and are hereby **DENIED**;

(2) The parties have until **on or before March 7, 2014** to submit a joint proposed protective order to govern Plaintiff's psychiatric treatment records;

(3) Plaintiff's *Motion to Compel Supplemental Responses* (Doc. 83) be and is hereby **DENIED**; and

(4) Defendant's *Motion to Compel* (Doc. 63) be and is hereby **DENIED**; however, the defendant is granted leave to conduct up to five additional discovery requests related to plaintiff's medical treatment history.

DONE this 24th day of February, 2014.

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE