IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION

```
COURTNEY McBRIDE,           )
                            )
     Plaintiff,             )
                            )       CIVIL ACTION NO.
     v.                     )         1:12cv1047-MHT
                            )              (WO)
DINESH KARUMANCHI,          )
                            )
     Defendant.             )
```

OPINION AND ORDER

Plaintiff Courtney McBride developed a rare skin disease after receiving treatment at a county hospital followed by her subsequent discharge to a local jail. She originally brought this lawsuit against the following defendants: Houston County Health Care Authority; Dr. Dinesh Karumanchi; Dr. Rajendra Paladugu; Dr. Rita Fairclough; the City of Dothan; Board of Commissioners of the City of Dothan; Mamie McCory; Stephanie Johnson; Williams Banks; Belinda Robinson; and Greg Benton. She asserted claims that the Health Care Authority and the doctors committed

medical malpractice in violation of Alabama law and that the City of Dothan and its correctional officers were deliberately indifferent to her medical needs in violation of the United States Constitution and were negligent in violation of Alabama law. She asserted that the court had both diversity-of-citizenship jurisdiction (28 U.S.C. § 1332) as well as federal-question (28 U.S.C. § 1331) and supplemental jurisdiction (28 U.S.C. § 1367).

After the court issued its summary-judgment opinion, all defendants except the Health Care Authority, Dr. Karumanchi, Correctional Officers McCory and Johnson, and the City of Dothan either had been dismissed or had summary judgment entered in their favor. See McBride v. Houston Cnty. Health Care Auth., 2015 WL 3892715 (M.D. Ala. 2015) (Thompson, J.). However, on qualified-immunity grounds, the correctional officers appealed the denial of their dismissal. In response, the court stayed the litigation as to those two defendants as well as to the

City of Dothan.  The Health Care Authority has also since been dismissed.  The question remains whether the court should stay this litigation as to the remaining state-law claim against Dr. Karumanchi.

As part of this issue, Karumanchi raised concerns that this court lacked subject-matter jurisdiction to try the claim against him separately.  Because the court has "a continuing obligation to assess [its] subject-matter jurisdiction and ... may consider subject matter jurisdiction claims at any time during litigation," Belleri v. United States, 712 F.3d 543, 547 (11th Cir. 2013), the court asked for briefing on whether it had diversity jurisdiction pursuant to 28 U.S.C. § 1332 or supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to try the remaining state-law claim.  After considering the parties' briefing, and conducting a hearing on the question of diversity jurisdiction, the court holds it has jurisdiction.

## I. DIVERSITY-OF-CITIZENSHIP JURISDICTION

### A. Legal Standard

"There are a number of basic legal principles regarding diversity-of-citizenship jurisdiction: that § 1332 grants federal courts jurisdiction over cases between 'citizens of different states'; that the party seeking diversity jurisdiction has the burden of establishing jurisdiction by a preponderance of the evidence; ... that diversity is determined when the suit is instituted, not when the cause of action arose; ... that, for diversity jurisdiction to exist, there must be 'complete diversity,' that is, each defendant must be a citizen of a state different from that of each plaintiff," and that "the terms 'citizenship' and 'domicile' are synonymous." McDonald v. Equitable Life Ins. Co. of Iowa, 13 F.Supp.2d 1279, 1280 & n. 1 (M.D. Ala. 1998) (Thompson, J.) (citing Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 373 (1978); Smith v. Sperling, 354 U.S. 91, 93 n.1 (1957)); Yeldell v. Tutt, 913 F.2d 533, 537 (8th Cir. 1990); Blakemore v.

Missouri Pac. R.R. Co., 789 F.2d 616, 618 (8th Cir. 1986)).

"The law is also well-established that a person is not necessarily a citizen of, or domiciled in, the state in which she resides at any given moment. ... Instead, 'citizenship,' or 'domicile,' is determined by two elements: (1) physical presence within a State; and (2) the mental intent to make a home there indefinitely." McDonald, 13 F.Supp.2d at 1280-1281 (citing Mississippi Band of Choctaw Indians, 490 U.S. at 48; Texas v. Florida, 306 U.S. 398, 424 (1939); Scoggins v. Pollock, 727 F.2d 1025, 1026 (11th Cir. 1984); Jagiella v. Jagiella, 647 F.2d 561, 563 (5th Cir. June 1981)).[1]  "Intention to remain there permanently is not necessary. ... It is enough to have a 'floating intention' to stay indefinitely and

---

1. In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

also have the general desire to return to one's former domicile at some undetermined point of time." McDonald, 13 F.Supp.2d at 1280 (citing Yeldell, 913 F.2d at 537 (8th Cir. 1990); Crowley v. Glaze, 710 F.2d 676, 678 (10th Cir. 1983)).

In determining domicile, a court should consider both positive evidence and presumptions. Mitchell v. United States, 88 U.S. (21 Wall.) 350, 352 (1874). One such presumption is that the State in which a person resides at any given time is also that person's domicile. District of Columbia v. Murphy, 314 U.S. 441, 455 (1941); Stine v. Moore, 213 F.2d 446, 448 (5th Cir. 1954); see generally 13B Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 3612. But because changes in residence are so common in this country, courts also refer to another presumption: once an individual has established a domicile, she remains a citizen there until she satisfies the mental and physical requirements of domicile in a new State. Yeldell, 913 F.2d at 537;

6

McDougald v. Jenson, 786 F.2d 1465, 1483 (11th Cir. 1986).

"However, these presumptions are merely aids for the court; they cannot override the actual facts of the case. The objective facts bearing on an individual's entire course of conduct' determine domicile for diversity-jurisdiction purposes." McDonald, 13 F.Supp.2d at 1281 (citing Wasson v. Northrup Worldwide Aircraft Services, Inc., 443 F. Supp. 400, 404 (W.D. Tex. 1978) (Suttle, J.)). "Facts frequently taken into account include but are not limited to: current residence; residence of family and dependents; place of employment and name of business; voting registration and voting practices; location of personal and real property; location of brokerage and bank accounts; membership in church, clubs, and business organizations; driver's license and automobile registration; and payment of taxes." McDonald, 13 F.Supp.2d at 1281 (citing Garcia v. American Heritage Life Ins. Co., 773 F. Supp. 516, 520 (D.P.R. 1991)

(Pieras, J.); 13B Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, Federal Practice and Procedure § 3612.) "No single factor is conclusive; instead, a 'totality of evidence' approach is necessary." McDonald, 13 F.Supp.2d at 1280-1281 (citing National Artists Management Co. v. Weaving, 769 F. Supp. 1224, 1228 (S.D.N.Y. 1991) (Conboy, J.)).

An individual's statements of intent also are considered in determining domicile. However, when subjective expressions of intent conflict with established facts, courts accord them less weight. Lew v. Moss, 797 F.2d 747, 750 (9th Cir. 1986); Hendry v. Masonite Corp., 455 F.2d 955, 956 (5th Cir. 1972). "But when subjective expressions of intent accord with objective facts, the subjective testimony bolsters the objective evidence." McDonald, 13 F.Supp.2d at 1281.

## B. Relevant Facts

All parties agree that all the defendants were citizens of Alabama when this case was filed. The

issue is whether McBride was a citizen of Florida, in which case the court has diversity jurisdiction, or, of Alabama, in which case the court does not. The relevant timeline is as follows:

- 2001: McBride graduated from high school in Dothan, Alabama.

- 2001-2004: McBride served in the military in Florida. While there, she opened several bank accounts and obtained a credit card in Florida.

- 2004-2007: McBride attended and graduated from Florida A&M University. She paid in-state tuition.

- 2007: At some point in 2007, she renewed her Alabama license.

- 2007-2010: McBride appeared to have lived in Florida in a series of apartments, but there is also evidence she traveled back to Alabama frequently. She went to the doctor in Alabama in 2008, 2009, and 2010. The doctor's office also always listed her Alabama number, although she said that the doctor relied on her driver's license, which had her mother's address.

- Summer of 2010 or 2011 (right before her law school): McBride spent a summer at Troy State in Dothan taking classes. She was charged in-state tuition, but all she remembered is not having to pay any tuition.

- 2011: Although not entirely clear from testimony, McBride appeared to spend either a year or, at least, a semester at law school in Florida.

9

- December 2011: McBride left law school and ended her lease at her Florida apartment.

- December 2011-June 2011: McBride went back and forth between Florida, where she stayed with friends, and Dothan, Alabama.

- Late June 2012 - Late July 2012: The incidents at issue in this lawsuit took place.  McBride was jailed and hospitalized.

- August 2012 - around September 2012:  McBride was taken care of by her mother for some time after being released from the hospital.  It is unclear how long.

- Around September 2012 - November 2012: McBride visited from friends in Florida after recovering but returned to Dothan, Alabama.

- November 29, 2012: This lawsuit was filed.

In addition to these events, McBride also appears to have registered to vote in Alabama although it is unclear when.  The court, though, credits her testimony that she has never voted.  Finally, McBride repeatedly stated that she was a citizen of Florida and that it was her intent to return there.

C. Analysis

Considering jurisdiction because McBride was a citizen McBride's entire course of conduct, the court finds it has diversity of Florida when the case was filed.

First, after examining the totality of the evidence, the court finds that McBride established her domicile in Florida by December 2011.  Except for a brief summer in Alabama to take classes, McBride lived in Florida for a decade following her high-school graduation.  She started in the Navy, where she spent three years.  During that time she opened multiple bank accounts and had a credit card in Florida.  Following her time in the Navy, she spent four years in college in Florida where she paid in-state tuition, after which she remained in Florida for another three years. Finally, after a summer taking classes in Alabama, she started law school in Florida before leaving in December 2011.  These factors--especially the long period of time McBride spent in Florida outside of

11

school--reflect that she established domicile there. Put differently, McBride left Alabama after high school and spent ten years in another State, where she worked, went to school, and made a life.

Admittedly, there are several factors that cut against McBride's domicile in Florida by December 2011. First, McBride originally went to Florida as a student, and residing in a State merely as a university student raises legitimate questions about a person's intent to remain in the State. Mitchell v. Mackey, 915 F. Supp. 388, 391 (M.D. Ga. 1996) (Owens, J.). However, that concern is not controlling in this case. As noted above, McBride worked in the Navy in Florida before attending school there and did not leave after her undergraduate studies. Unlike other college students who merely go to a State to attend school, she demonstrated an intent to remain there.

Second, McBride received in-state tuition in Alabama as well as Florida. Neither side presented evidence on how a student can pay in-state tuition in

12

either State, but it appears that for a student to pay in-state tuition each State generally requires an intent to remain. See Fla. Stat. Ann. § 1009.21 (referencing Fla. Stat. Ann. § 222.17, which includes an intent to remain requirement, in order to establish residency for in-state tuition); 1975 Ala. Code § 16-64-3 (noting that residency requirements for in-state tuition require an address in Alabama, an intent to remain, and possession of more substantial contacts to Alabama than other States); but see 1975 Ala. Code § 16-64-2(1)d (establishing that colleges have discretion also to allow in-state tuition for retired or active duty military personnel who live within 90 miles of campus); Fla. Stat. Ann. § 1009.21(10)(b) (also establishing a military exception). Of course, a school's determination of domicile for tuition purposes, while relevant, does not bind a court's determination of domicile for jurisdiction, because the factors used to determine domicile could differ and because the school's

13

investigation may not be as thorough as a court's.  Cf. Alicea-Rivera v. SIMED, 12 F. Supp. 2d 243, 246 (D.P.R. 1998) (Fuste, J.) (noting that, although plaintiff qualified to pay in-state tuition in Ohio and could vote there, this was not determinative of domicile because he did not rent property there, pay utilities bills there, or have post-graduate plans there), abrogated on other grounds by Garcia Perez v. Santaella, 364 F.3d 348, 352 n.2 (1st Cir. 2004) (stating that the Alicea-Rivera court incorrectly required the plaintiff to prove jurisdiction by clear and convincing evidence rather than by a preponderance of the evidence).

Indeed, the court is not convinced that McBride had domicile in Alabama when she likely certified as such when taking summer classes there.  At the least, assuming McBride claimed domicile in Alabama for tuition purposes (and did not fall under a military exception), that claim--whether or not a legitimate one--undermines her argument that paying in-state

tuition in Florida established her domicile there and weighs against her general claim that she was a citizen of Florida as of December 2011. Nevertheless, considering that the summer classes in Alabama occurred after around a decade in Florida, and that McBride returned to Florida after this summer, her one summer of paying in-state tuition in Alabama during a ten-year period does not indicate she was an Alabama rather than a Florida citizen.

Last, McBride renewed her Alabama license, went to the doctor in Alabama, and visited her mother in Alabama. These factors weigh against McBride's claim of Florida domicile.

However, despite the above weighing against McBride's Florida citizenship in December 2011, the totality of the evidence shows the McBride was domiciled in Florida by December 2011, mainly because of her long residency in Florida over nearly ten years, including time in the Navy, renting several apartments, and attending two schools. This established domicile

15

gives McBride the presumption that Florida remained her domicile: "[O]nce an individual has established a domicile, he remains a citizen there until he satisfies the mental and physical requirements of domicile in a new state."  McDonald, 13 F. Supp. 2d at 1280-81.

The more difficult question is whether McBride's activity between December 2011 and November 2012 changed her citizenship from Florida to Alabama.  There are conflicting signals.  Between December 2011 and June 2011, McBride went back and forth between Florida, where she stayed with friends, and Alabama, where she stayed with her mother.  Nothing in that time, however, indicates that she changed her intent to wanting to live in Alabama.  Indeed, McBride testified that she intended to return to Florida, and, given that she spent the vast majority of her adult life in Florida, the court has no reason to doubt that testimony.  McBride's time spent in Alabama during her hospitalization and the several months afterward also do not change the presumption.  Of course, when McBride

16

was hospitalized and recovering during the summer of 2012, she had no choice on where to live. In the fall of 2012, the few months following her hospitalization, she spent time in both Florida and Alabama.

In sum, on November 29, 2012, when this case was filed, McBride continued to be a citizen of Florida.[2] The court therefore has diversity-of-citizenship jurisdiction.[3]

## II. SUPPLEMENTAL JURISDICTION

Even if the court did not have diversity jurisdiction in this case, it still would have supplemental jurisdiction over the state-law claim.

---

2. Karumanchi presents a number of additional facts from 2014 indicating McBride's citizenship in Alabama, including her application for housing, doctor appointments, and car registration in Alabama from that time. These facts from 2014, over a year after the case was filed, does not convince the court that McBride was a citizen of Alabama when the case was filed in 2012.

3. Karumanchi does not contest that this case also meets the $ 75,000 threshold.

17

"Section 1367(a)[, which governs supplemental jurisdiction,] gives federal courts the power to exercise supplemental jurisdiction over all claims that arise out of a common nucleus of operative fact with a substantial federal claim." <u>Upper Chattahoochee Riverkeeper Fund, Inc. v. City of Atlanta</u>, 701 F.3d 669, 678 (11th Cir. 2012) (internal quotation marks omitted).

All parties agree that these two requirements are met. First, the court has jurisdiction over the federal § 1983 claim against the correctional officers, and, second, the injuries alleged in the federal- and state-law claims all derive from McBride's alleged diagnosis of Stevens-Johnson Syndrome and Toxic Epidermal Necrolysis. Moreover, as all parties agree, an appeal of the denial of qualified immunity does not divest the court of jurisdiction over the state-law claim, because the federal claim has not been dismissed.

Therefore, even if the court did not have diversity jurisdiction, it would have supplemental jurisdiction over the state-law claim against Karumanchi.

***

Accordingly, it is ORDERED that the court still has jurisdiction over the state-law claim against defendant Dinesh Karumanchi.

DONE, this the 8th day of July, 2015.

                         /s/ Myron H. Thompson
                         UNITED STATES DISTRICT JUDGE